CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
JUL 17 2014
JULIA C. DUDLEY, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ROBERT W. DOUGHERTY, | ) | CASE NO. 7:14CV00066 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| COMMONWEALTH OF VIRGINIA, | ) | By: Glen E. Conrad |
| ET AL., | ) | Chief United States District Judge |
| | ) | |
| Defendant(s). | ) | |

Robert W. Dougherty, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, against the Commonwealth of Virginia, the sheriff of Fairfax County, and various officials of the Fairfax County Adult Detention Center ("FCADC"), Green Rock Correctional Center ("GRCC"), and Coffeewood Correctional Center. He alleges that each of the defendants took or failed to take some action in violation of his constitutional rights. Upon review of the record, the court finds that the action must be summarily dismissed as frivolous.

## I. STANDARD OF REVIEW

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

## II. DISCUSSION OF CLAIMS

As an initial matter, Dougherty's complaint should actually be split in sections and refiled as at least three separate civil actions. The complaint haphazardly joins multiple claims against multiple defendants from three different jail or prison facilities, with no regard for the restrictions of Rules 18 and 20 of the Federal Rules of Civil Procedure.[1] Because the court concludes that all of Dougherty's claims in the action must be summarily dismissed under § 1915A(b)(1) as frivolous, however, the court need not address Dougherty's blatant disregard of the joinder rules.

### A. Claims against Nonpersons

As an initial matter, Dougherty's claims against the Commonwealth must be dismissed under § 1915A(b)(1), as frivolous. It is well settled that a state cannot be sued under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Similarly, Dougherty's claims against the "Office of the Sheriff of Fairfax County" must be dismissed, as this defendant is not a "person" subject to suit under § 1983. Id.

The individual officials that Dougherty names as defendants are state actors subject to suit under § 1983. Dougherty's allegations, however, for the reasons explained herein, do not state any plausible constitutional claim against any of them as necessary to hold anyone liable under § 1983. See Twombly, 550 U.S. at 570.

---

[1] Under Rule 18(a), which governs joinder of claims, a plaintiff may bring multiple claims, related or not, in a lawsuit against a single defendant. However, in order to name other defendants in the same lawsuit, the plaintiff must satisfy Rule 20(a)(2), which governs joinder of parties. Rule 20(a)(2) permits joinder of multiple defendants only where the right to relief asserted against them arises out of the same transaction or occurrence and concerns a common question of law or fact. On its face, Dougherty's omnibus complaint does not comply with either of these rules.

2

## B. Fairfax County Claims

The first section of Dougherty's complaint asserts that in February and March 2011, several officials at FCADC confiscated his contact lenses, failed to arrange for him to see an eye doctor or to get replacement lenses, and failed to compensate him for a lens that was never returned. He also alleges that an FCADC library official interfered with his attempts to make photocopies and review court rules when Dougherty was preparing pleadings for a state court civil action he filed in November 2011 about his problems with his contact lenses.[2]

The claims alleging wrongful deprivation of Dougherty's contact lenses and access to the law library and to photocopies while at FCADC must be summarily dismissed under § 1915A(b)(1) as time barred under the applicable statute of limitations. When it is clear from the face of a § 1983 complaint that the plaintiff's claim is barred by the applicable statute of limitations, the court may summarily dismiss the complaint without prejudice as legally frivolous. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 956 (4th Cir. 1995) (en banc).

A § 1983 claim based on events that occurred in Virginia must be brought within two years from the time when the action accrues or it is barred under Va. Code Ann. § 8.01-243(a), Virginia's statute for general, personal injury claims. See Owens v. Okure, 488 U.S. 235, 239-40 (1989). A claim under § 1983 accrues when plaintiff knows enough about the harm done to him to bring his lawsuit. Nasim, 64 F.3d at 955. It is clear from the face of Dougherty's complaint

---

[2] Dougherty also alleges that unnamed officials at the FCADC retaliated against him for filing his state court civil action by firing him from his laundry job there and transferring him to a housing area with less desirable living conditions. Dougherty does not offer particular details about these events or about the personal involvement of any of the parties before the court in this action. Therefore, these claims must be summarily dismissed as factually frivolous under § 1915A(b)(1). See West v. Atkins, 487 U.S. 42, 48 (1988) (finding that to state § 1983 claim, plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law).

3

that he knew in 2011 of the harm he is alleging the FCADC defendants inflicted on him, by confiscating his lenses and interfering with his access to courts. Yet, Dougherty did not file this § 1983 action until mid-February 2014, more than two years later. Thus, any § 1983 claim he may have had against the FCADC defendants is barred under § 8.01-243(a), and must be summarily dismissed without prejudice under § 1915A(b)(1) as legally frivolous.

### C. Green Rock Claims

Dougherty alleges that he arrived at GRCC on April 20, 2012. He states that although he was 69 years old at this time, he was "physically hale and exercised every day." (Compl. 31.) Dougherty brings numerous complaints about living conditions and officials at GRCC, all of which must be summarily dismissed under § 1915A(b)(1).

#### 1. Law Library Access

Dougherty alleges that GRCC officials ignored his requests to access the law library despite the fact that he was litigating a state court civil action. The lawsuit was ultimately dismissed. Dougherty fails to show, however, that the lawsuit included any viable claim or that the court dismissed the lawsuit because of any particular item or issue related to Dougherty's alleged inability to use the GRCC law library. Thus, his complaint does not provide a factual basis for any constitutional claim that GRCC officials deprived him of his right to access the courts. See Lewis v. Casey, 518 U.S. 343, 354, 356-57 (1996) (holding that to state claim regarding denial of access, inmate must show that he was unable to bring, or he lost, a particular viable claim because specified deficiencies in his access to legal materials denied him the "capability" of litigating that claim).

4

## 2. Vision Problems

Dougherty alleges that for twenty months, while he was incarcerated at other jails, he had been forced to do without his contact lenses. During his intake medical examination at GRCC in April 2012, unidentified GRCC medical officials learned of his lack of visual acuity from his eye chart test. Yet, they allegedly ignored his requests for medical care, despite knowing that his poor vision and his small stature put him at risk. On July 4, 2012, Dougherty's cell mate, Inmate Brown, assaulted him, and Dougherty required medical treatment. In August 2012, GRCC officials provided Dougherty with eye glasses and required him to pay for them.

The court cannot find that Dougherty has stated facts showing that this four-month delay in providing him with glasses provides a factual basis for a constitutional claim against anyone. To prove that the course of medical treatment he received amounted to a constitutional violation, an inmate must show that personnel to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-106 (1976). An official's intentional act or omission that merely delays an inmate's access to necessary medical care states such a claim only if the plaintiff shows that the delay resulted in substantial harm to the patient. Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008) (citing other cases). Dougherty does not state facts demonstrating that he had a serious medical need for glasses when he arrived at GRCC. Nor does he state facts showing that his lack of glasses exacerbated his vision problems or otherwise caused him any substantial harm.[3] The court will dismiss this claim under § 1915A(b)(1) as frivolous.

---

[3] Dougherty makes no factual connection between his alleged lack of medical care for his poor vision and his being assaulted by Brown. More importantly, Dougherty does not state facts showing that any defendant knew of a serious risk that Brown would assault Dougherty before it happened. Thus, Dougherty has not demonstrated that Brown's assault was caused by any official's deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (finding that an officer acts with "deliberate indifference" if he "knows of and disregards an excessive risk to inmate health or safety").

5

### 3. Cell Mate Problems

After Inmate Brown assaulted Dougherty on July 4, 2014, Officer Morton failed to discipline Brown, allegedly because Brown worked for Morton. When Dougherty returned to the prison after receiving medical care, officials placed him in a cell with another inmate, whom they allegedly knew to be racist and homosexual. A few days later, this cell mate slapped Dougherty's bald head. Dougherty complained to Morton, who told him that it was only horseplay. Morton said that if Dougherty complained further about the altercation, Morton would have to write charges against both inmates for fighting and place them in segregation. Later, Dougherty discovered property items missing from his cell. His cell mate admitted to taking the items, which included legal pleadings Dougherty had written for another inmate. Dougherty alleges that the theft resulted from a conspiracy to prevent Dougherty from getting paid for his legal work. Officials assured Dougherty that he would be moved, but he was not moved until July 14, 2012.

These allegations simply do not give rise to any claim of constitutional significance. Dougherty has no constitutional right to have officials pursue disciplinary or criminal charges against the inmate who assaulted him or the one who stole his property items. See Diamond v. Charles, 476 U.S. 54, 64-65 (1986) (finding that individual has no judicially cognizable interest in prosecution or non-prosecution of another person). Moreover, he fails to state any plausible constitutional claim against officials for failing to protect him from his cell mates. See Case v. Ahitow, 301 F.3d 605, 607 (4th Cir. 2002) (noting that when plaintiff claims failure to protect, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so"). Dougherty does not state facts from which Morton knew either of the cell mates posed any risk of physical harm to Dougherty.

Indeed, when Dougherty refused segregation after his second cell mate slapped him, GRCC officers could reasonably have believed that he did not fear suffering any serious harm from that cell mate. The court must dismiss Dougherty's cell mate claims under § 1915A(b)(1) as frivolous.

### 4. Top Bunk Problems

On July 14, 2012, officials moved Inmate Brown back to the same housing area where Dougherty was assigned. Dougherty complained, and officers moved Dougherty the next morning to another housing area, where he was assigned to a top bunk. He complained immediately that at age 69, he had difficulties getting down from a top bunk to use the bathroom at night. Officers said he would be reassigned to a lower bunk soon,[4] but repeatedly assigned him to a top bunk.[5]

The court must dismiss these top bunk claims as frivolous. Inconvenient or uncomfortable conditions of confinement are not unconstitutional. Prison living conditions that "are restrictive or even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To prove a constitutional claim related to an allegedly unsafe jail condition, Dougherty must show that each defendant knew, subjectively, that the challenged condition presented a substantial risk of serious harm and nevertheless failed to take "reasonable measures" to alleviate it. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). He must also "produce evidence of a serious or significant

---

[4] Dougherty faults these officers primarily for "lying" to him — telling him he would be moved to a lower bunk and then not carrying out that promise. An officials' verbal comments to an inmate do not provide any basis for a § 1983 claim, however. See Henslee v. Lewis, 153 F. App'x 179, 179 (4th Cir. 2005) (finding that allegations of verbal abuse and harassment by guards do not state any constitutional claim) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979).

[5] On several occasions, Dougherty allegedly refused to go to a cell where he would be assigned a top bunk, and officials brought disciplinary charges against him for disobeying a direct order. As he states that the charges were later dismissed, Dougherty fails to demonstrate any actionable harm related to these disciplinary charges, particularly because he admits to the charged disobedience.

7

physical or emotional injury resulting from the challenged condition." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Dougherty has not met either factor of this analysis. He does not state that he suffered any harm whatsoever from being assigned to a top bunk. Moreover, other than his age, he states no fact from which the defendants could have known that sleeping in a top bunk posed a serious risk of substantial harm for Dougherty. The court will summarily dismiss this claim under § 1915A(b)(1) as frivolous, as Dougherty has provided no factual basis on which to believe his top bunk assignment implicated any constitutionally protected right.[6]

### 5. IAD Issues

On November 28, 2012, officers transferred Dougherty to Montgomery County, Maryland, for disposition of a detainer. Dougherty blames the GRCC warden for instigating this proceeding, since Dougherty himself did not ask for disposition of the detainer pursuant to the Interstate Agreement on Detainers ("IAD"). The Maryland court completed proceedings, and officials transported Dougherty back to GRCC on January 29, 2013. He is still subject to a Maryland detainer and complains that it should be dismissed because he was denied his speedy trial rights under the IAD.

The IAD "enables a participating state to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges." Reed v. Farley, 512 U.S. 339, 341 (1994). Thus, Dougherty's claim that his trial on the Maryland charges somehow violated his constitutional or statutory rights is frivolous. Moreover, because an inmate's request for disposition of a detainer is the factor that triggers the time limit under Article III of the IAD, Dougherty has no actionable "speedy trial" claim here regarding the pending detainer. See IAD,

---

[6] Dougherty also asserts that by assigning him to an upper bunk, officers violated prison policy, which called for inmates over age 55 to be assigned to a lower bunk. However, a state official's failure to abide by state regulations is not a federal constitutional claim, Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990), and is, therefore, not actionable under § 1983.

8

Art. III(a) (providing 180 days from prisoner's proper request for disposition of detainer for receiving state to bring him to trial). The court will summarily dismiss all claims related to the detainer under § 1915A(b)(1) as frivolous.

### 6. Job Hunting and Classification

Dougherty, in light of his education and work experience, asked for a job in the GRCC law library or education department. Despite a promising interview with one official, Officer Coates denied Dougherty a job in the law library. Dougherty also alleges that Coates prevented his job application from being forwarded to the education department. In addition, Dougherty complains that Coates erroneously assigned Dougherty to a security level II without interviewing him in person, which resulted in his being transferred to a higher security facility. According to Dougherty, Officer Coates recommended this transfer on the basis that Dougherty would benefit from "more structure," in light of the many disciplinary charges he had accumulated at GRCC.

These allegations about Dougherty's work status and reclassification do not provide a factual basis for any claim that officials deprived him of a constitutionally protected right. See Altizer v. Paderick, 569 F.2d 812, 813 (4th Cir.1978) (holding that "the classifications and work assignments of prisoners . . . are matters of prison administration, within the discretion of the prison administrators" and that a prisoner has no constitutionally protected interest in either his job status or his classification status). Inmates have no constitutional right to be confined in a prison with any particular set of security restrictions, Meachum v. Fano, 427 U.S. 215, 223-224 (1976), and they have no constitutional right to a prison job. Adams v. James, 784 F.2d 1077-1079 (4th Cir. 1986). Therefore, the court will summarily dismiss these claims, regarding Dougherty's job application and his reclassification, under § 1915A(b)(1), as frivolous.

## 7. Disciplinary Charges and Detention

Dougherty sues Defendant Hatch for alleged ineptness as a prison counselor and for bringing a disciplinary charge against Dougherty in April 2013 for using insolent language, after Dougherty allegedly greeted Hatch by saying: "Well, hello, Worthless." (Compl. 28.) Dougherty denies making this statement. He admits that Hatch later apologized to him, and the charge was dismissed.

Dougherty also sues other officials for wrongful disciplinary charges and segregated confinement. In June 2013, GRCC officials notified all inmates that if they did not have a birth certificate on file and had not applied for one by June 10, 2013, they would receive a disciplinary charge. Dougherty refused to apply for a birth certificate, and officials brought a disciplinary charge under Operating Procedure ("OP") 119(c) against him for refusing to comply with this classification or reentry requirement. At the hearing on this charge, Dougherty explained that he had never been issued a birth certificate and that in Fairfax in 2010, jail officials had confiscated his registration of birth. The hearing officer allegedly refused to consider this information, ejected Dougherty from the hearing, found him guilty of the charged offense, and imposed a penalty of 15 days of detention.[7] Dougherty complains that he spent 48 days in detention and seeks monetary damages.

---

[7] Dougherty also alleges that the mandatory penalty for this charge included the loss of 90 days of accumulated good time. In this § 1983 action, however, he does not seek restoration of any lost good time. He also does not seek monetary damages for loss of good time, nor could he. If a prisoner's challenge to a disciplinary hearing would necessarily imply the invalidity of his disciplinary conviction if successful, any cause of action under §1983 for monetary damages against individuals involved in that conviction does not accrue until the prisoner shows that the conviction has been otherwise overturned. See Edwards v. Balisok, 520 U.S. 641 (1997) (citing Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)).

In any event, the court cannot find that Dougherty's allegations reflect any procedural error in these disciplinary proceedings. He admits that he refused to apply for a birth certificate, which gave the hearing officer some evidence on which to convict and penalize Dougherty. See Superintendent v. Hill, 472 U.S. 445, 455 (1985) (finding that court may uphold disciplinary hearing outcome if it is supported by some evidence in the record).

10

The court does not find a factual basis in these allegations for any claim that Dougherty was deprived of a constitutionally protected right. First, Dougherty had no constitutional right to avoid being charged with disciplinary infractions. Richardson v. Ray, 492 F. App'x 395, 396 (4th Cir. 2012) (citation omitted). Thus, his mere allegation that officers brought allegedly unfounded disciplinary charges against him does not state any constitutional claim actionable under § 1983. Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986). Moreover, when a disciplinary charge never resulted in Dougherty being penalized in any way, as with the dismissed charge for using insolent language against Hatch, he has not suffered any deprivation of rights on which to rest a § 1983 claim. See, e.g., Chidubem v. McGinnis, 134 F.3d 370, 1997 WL 809958, at *1 (6th Cir. 1997) (finding no due process right at issue where inmate received no punishment for misconduct charge). The court will summarily dismiss Dougherty's claims regarding wrongful disciplinary charges under § 1915A(b)(1) as frivolous.

Dougherty also has no actionable § 1983 claim based on his period of segregated confinement. When a defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of the sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). To state a claim that he has a protected liberty interest related to long-term administrative confinement, an inmate must first allege facts demonstrating that conditions to which he was subject in that confinement status constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Dougherty fails to show that he had a protected liberty interest related to his segregated confinement status. He fails to offer any respect in which conditions in detention presented any unusual difficulty or discomfort when compared to other VDOC confinement categories.

11

Moreover, Dougherty's allegation that officials maintained him in segregation past the expiration of his detention sentence for his prison disciplinary charges does not present any federal due process issue actionable under § 1983.[8]  See Riccio, 907 F.2d at 1469.  The court must summarily dismiss Dougherty's claims regarding his disciplinary segregation status.

### C. Coffeewood Correctional Center Claims

Dougherty arrived at Coffeewood on August 30, 2013.  He immediately applied for several prison jobs, but officials either advised him that no positions were available or did not respond at all.  Dougherty was assigned to a bottom bunk in the reentry program area of the prison.  Shortly thereafter, however, a program counselor named Ms. Abbs informed him that because of his education and his age, he was not suitable for the reentry program area.  Abbs moved him to a unit designated for inmates who are older or have mental or physical disabilities.

On September 19, 2013, officers overheard Dougherty talking about his desire to work and assured help.  In mid-October, they arranged for Dougherty to be transferred, without explanation, back to the reentry program.  His bunk was not visible from the control booth, and the next day someone stole food from Dougherty's locker.  When officials informed Dougherty that he was required to participate in the reentry program, he refused, stating that Abbs had deemed him unsuitable for the program. He also complained about the theft.  Defendant Amison said she would move Dougherty from that dorm and investigate the theft.  Amison then asked Dougherty to write a letter about why he did not want to participate in the reentry program; instead, Dougherty wrote a letter stating "I will not be in [the] program" and explaining why. (Compl. 39.)

---

[8] The court notes that according to the complaint, when officials ordered Dougherty to return to a general population cell, he refused four times, because he did not want a top bunk. He cannot rest blame on officials for his lengthy segregation stay, when he chose to refuse these offered transfers to the general population

12

Amison then brought an OP 119(e) charge against him for refusing to participate in "a residential cognitive community." (Id.) Dougherty asked the institutional investigator to look into this matter and requested the investigator to appear as a witness for the disciplinary hearing. The hearing officer held that "after the fact" testimony from the investigator was immaterial. He also refused Dougherty's request for Abbs as a witness to testify about her prior finding that Dougherty was unsuitable for the reentry program. Based on another officer's allegedly inaccurate statement that Dougherty did not want to participate in the reentry program, the hearing officer found him guilty of the offense. Dougherty claims this conviction was a violation of OP 119, which provides that this offense code "should be used only once during a continued period of refusal." (Compl. 41.)

Dougherty also had trouble obtaining photocopies of legal work while at Coffeewood. Defendant Kitts limited the number of photocopies Dougherty could request and charged him for illegible copies and copies of filing forms and prison policies. The Supreme Court of Virginia required Dougherty to rewrite a petition because the copies he mailed to the court were illegible, and prison officials would not refund the monies paid for the illegible copies. The limit on copies per day caused delays and inconvenience as Dougherty prepared his submissions for this § 1983 action.

The court finds no actionable constitutional claims arising from Dougherty's allegations against Coffeewood officials. First, Dougherty has no constitutional right to prison employment, Adams, 784 F.2d at 1079, and officers' assurances about trying to find a job for Dougherty did not create any such right. See, e.g., Henslee v. Lewis, 153 Fed. App'x 179, 179 (4th Cir. 2005) (finding that allegations of verbal abuse and harassment by guards do not state any constitutional claim) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Under § 1915A(b)(1), the

13

court will summarily dismiss these claims concerning Dougherty's search for employment at Coffeewood as frivolous.

Second, Dougherty has no actionable § 1983 claim concerning the disciplinary charge he received for refusing to participate in the reentry program at Coffeewood. Under Balisok, Dougherty cannot recover the monetary damages he requests against individuals involved in bringing and prosecuting this charge. 520 U.S. at 646. He cannot bring a suit for damages at this time, because his allegations about the defects in the disciplinary proceedings, if true, would invalidate his conviction, and he offers no evidence that the conviction for the charge has been set aside or otherwise overturned. [9] Id. The court will summarily dismiss Dougherty's claims regarding his disciplinary proceedings under § 1915A(b)(1) as frivolous.

Finally, Dougherty's complaints about Coffeewood photocopy policies and problems do not provide a factual basis for any constitutional claim. "[I]t is well established that inmates do not have unlimited rights to photocopies or photocopying machines." Harrison v. Moketa/Motycka, 485 F. Supp. 2d 652, 658 (D.S.C. 2007) (citing other cases). Similarly, the court finds no claim of constitutional significance related to Dougherty's difficulties with photocopies he purchased being illegible or his being charged for photocopies of forms and policies.[10] Dougherty has not demonstrated that the alleged inconvenience and delays he experienced in obtaining usable photocopies at Coffeewood resulted in any harm to his efforts to

---

[9] In any event, the court cannot find that Dougherty's allegations reflect any procedural errors related to the disciplinary charge. Dougherty admits that he refused to participate in the reentry program, which gave the hearing officer sufficient evidence on which to convict and penalize Dougherty, and the refused witnesses' testimony was immaterial to this finding. Hill, 472 U.S. at 455. Moreover, since this 119(e) charge is the only such charge Dougherty has received during his period of refusing to participate in the Coffeewood reentry program, the court finds no violation of the duplicate charge prohibition in OP 119.

[10] Dougherty's assertions that these charges violated prison policies do not provide any basis for a § 1983 claim. Riccio, 907 F.2d at 1469. To the extent that Dougherty is attempting to pursue any claim under state law based on these or any of the alleged policy violations he describes, the court declines to exercise supplemental jurisdiction over such claims. See 28 U.S.C. § 1367(c).

14

litigate any viable legal claims in any court, as required to bring an access to courts claim. Casey, 518 U.S. at 354. Indeed, Dougherty does not state facts indicating that any of the multitude of photocopies he sought to purchase at Coffeewood were necessary to his initiation or meaningful pursuit of any lawsuit.[11] Finding no factual basis here for any constitutional violation actionable under § 1983, the court will summarily dismiss Dougherty's photocopy claims under § 1915A(b)(1) as frivolous.

### III. CONCLUSION

For the reasons stated, the court dismisses Dougherty's complaint without prejudice, pursuant to § 1915A(b)(1), as frivolous. The clerk will send a copy of this memorandum opinion and the accompanying order to plaintiff.

ENTER: This 17th day of July, 2014.

/s/ Glen Conrad
Chief United States District Judge

---

[11] Dougherty has no actionable claim that photocopy problems at Coffeewood prevented him from filing this civil action before the statute of limitations barred his litigation of his § 1983 claims against the Fairfax defendants. See II(A), supra. Dougherty's own submissions indicate that he did not arrive at Coffeewood until August 2013, several months after the statute of limitations on the Fairfax claims expired in February 2013. Moreover, Dougherty's right to access the courts does not include any right to bring a myriad of unrelated and frivolous claims against 20 defendants from three different prison facilities, in violation of numerous federal procedural rules. The court notes that this action is the second such voluminous, frivolous complaint Dougherty has filed in this court. See Dougherty v. Commonwealth of Virginia, et al., No. 7:12CV00549 (W.D. Va. Feb. 27, 2013). Dougherty is advised that filing another such frivolous complaint, misjoining claims and defendants, may result in sanctions.